## BUTLER v. WASHINGTON–YOUREE HOTEL CO., Inc., et al.
### No. 5051.

Court of Appeal of Louisiana.
Second Circuit.

May 2, 1935.

E. W. & P. N. Browne and John B. Files, all of Shreveport, for appellants.

Harry V. Booth, of Shreveport, for appellee.

DREW, Judge.

George William Butler was employed by and working for the Washington-Youree Hotel Company, Inc., as assistant engineer. His hours of work were from 7 p. m. to 7 a. m., in the engine room of the said hotel. No one was on duty with him between the hours of 1 a. m. and 7 a. m. He had held this position for several years. He was apparently in good health and regular at his work.

On the afternoon of January 23 or 24, 1934, Butler left his home apparently in good health, and began to perform his regular duties. When his helper, or the fireman, went off duty at 1 a. m. the following morning, nothing unusual had happened to Butler. At 7 a. m. Butler ceased his work and proceeded to his home, some 16 blocks away. If any one saw him before he reached his home, he has kept silent. When he arrived at home, he was walking with a limp and was immediately asked by his wife the cause of his limping. The landlady, with whom they were living, was present at the time. Butler replied that he had struck his knee or leg against a pump in the engine room at the hotel. At that time his leg, just above the knee and the upper part of the kneecap, was bruised, red, inflamed, and slightly swollen. His wife treated the place with home remedies, and that afternoon Butler returned to his regular employment and continued to fulfill his duties until February 3, 1934, although he was constantly limping. On February 3, 1934, his condition became such that he called to see the hotel company's physician who, after examining the bruised place, sent him to the sanitarium where he remained until he died of septicæmia. The causes of death, as given by the coroner of Caddo parish, who held the autopsy, are: "Septicæmia; contributory diabetes, septic infarcts, multiple metastatic abscesses and seropurulent pericarditis, acute myocarditis, pleurisy, etc."

Prior to the time Butler began limping, he was suffering with diabetes, but was unaware of it. His wife on her own behalf and that of the two minor children, issue of her marriage with Butler, filed this suit praying for compensation at the rate of 65 per cent. of Butler's wage per week for a period of 300 weeks. She made defendants the hotel company and its insurer. She alleged that Butler on or about January 23 or 24, 1934, while in the course of his employment, bumped his knee against a pump, or other machinery, which was used by the defendant hotel company in its heating and cooling system in the operation of the hotel; that the accident occurred between the hours of 1 a. m. and 7 a. m.; and that, from that accident and injury received, septicæmia set in, and he died on February 17, 1934.

The defense set up is that Butler did not receive any injury while on duty or in the performance of his duties for the defendant hotel company, and that if he did it was not the cause of his death; that his death was caused from disease or diseases with which he was afflicted long prior to the date of the alleged accident.

On these issues the case was tried, and the judgment below was in favor of plaintiff, as prayed for. Defendants have perfected an appeal to this court.

The only question of law involved in the case is as to the admissibility of evidence. After this is disposed of the case evolves itself into questions of fact, pure and simple.

There were no eyewitnesses to the alleged accident, and Butler is dead, and we have not the benefit of his testimony. When plaintiff offered to prove by herself and her landlady what Butler said about where and when he was injured, it was objected to by defendants for the reason it was hearsay and not part of the res gestæ. The objection was overruled, and the testimony allowed. The objection is strenuously urged.

The Employers' Liability Act of Louisiana (Act No. 20 of 1914, § 18, subd. 4, as amended by Act No. 85 of 1926, p. 122), provides that the judge shall not be bound by technical rules of evidence or technical rules of procedure, but all findings of fact must be based upon competent evidence. In the case at bar, if the testimony of deceased's wife and his landlady is not admissible, then plaintiff's case will necessarily fail because, if it cannot be shown by their evidence that an accident occurred, that is, that deceased bumped his knee on a pump in the engine room of the hotel company while on duty, then there is no legal evidence to show that an accident did occur.

The accident and resulting injury appeared to be of a trivial nature, and, if such an accident had happened to a healthy person, the chances are it would have been trivial. Butler undoubtedly considered it of no consequence, and, if there had been any one available between the hours of 1 a. m. and 7 a. m. to whom to report the accident, it is very doubtful that he would have done so. However, on arriving home immediately after his hours of work were done, it was perfectly natural for him to explain to his wife why he was limping, and ask for and receive some treatment. The question of whether the explanation made to his wife and landlady was spontaneous or related with forethought and design, is the question to be considered as a basis for the admissibility of the evidence. The evidence showing the conduct of deceased after the accident makes it certain to our minds that the explanation made by him to his wife and landlady was spontaneous, and without forethought and design. At that time deceased had no idea of claiming compensation for what he thought was a trivial injury. He continued at his regular work, made no report to his superiors, and did not visit the doctor's office, which was in the hotel and available at any time. It was ten days after the accident when his knee and leg had grown worse and had become unbearable, before he called on defendant's doctor, or any other doctor. Butler's conduct is not consistent with the idea or contention that he expected to claim compensation.

No one knows exactly what time the accident occurred. It was between 1 a. m. and 7 a. m. It may have happened at 2 a. m. or at 6 a. m.; however, time alone is not the only element to be considered in determining whether or not the statement of deceased was a part of the res gestæ. Several days after the accident, deceased made the same statement he had made to his wife to three or four other reputable persons, who testified to that fact over the objection of defendants. These last-mentioned witnesses were not allowed to testify under the res gestæ rule, but in corroboration of deceased's wife and landlady, to show they were telling the truth when testifying as to the explanation of the injury given to them by deceased. There was no error in this ruling, and we are of the opinion that the statement and explanation made by deceased to his wife and landlady immediately upon arriving at his

home were admissible under the res gestæ ruling.

■ A very similar case was passed on by the Orleans Court of Appeal, Day v. Armour Fertilizer Works, 8 La. App. 720, in which the court said:

"The testimony shows that the gate of the plant where plaintiff's husband was employed was about two blocks from his home; that immediately on quitting his work and returning to his home in the morning about 7 a. m., he made a statement of the time, place and manner of his injury to his wife and to a woman who assisted in giving him first aid. He said to the latter: 'I stuck a nail.' Objection was at once made and sustained that it was hearsay.

"In addition to the above the plaintiff herself was asked by her counsel:

" 'While you were attending to your husband's foot on the morning of the 14th, did he make any statement to you as to where he had sustained the injury?'

"To which objection was immediately made on the ground, among others, that it was 'purely hearsay.' The objection was sustained and the testimony excluded.

"We are of the opinion that the question and answer form part of the 'res gestæ' and were admissible, and that the ruling was erroneous. 'Res gestæ' are the spontaneous and contemporaneous declarations made by the parties or by a witness at the time of the occurrence or soon thereafter. What is res gestæ is not defined by any arbitrary rule, but depends upon circumstances, and rests very much upon the discretion of the Court. Wharton, Crim. Ev., § 262.

"In this case considering that plaintiff's husband was employed at night, that the plant was only two blocks from his home, that he left his work at about seven o'clock in the morning, and walked directly to his home; that there he immediately removed his shoe and had his foot treated by his wife and a neighbor, and that he made to them a declaration concerning the manner of the injury to his foot, we are of the opinion that the declaration made to them by the plaintiff's husband at that time and under those conditions constitutes the very 'res gestæ' described by the law, and that his declarations at that time and place should have been admitted to be weighed as other testimony in that case. 22 C. J. 449, §§ 543, 545, 549; 1 H. D. 502; No. 9293, Ct. App.

" 'A declaration to be a part of the res gestæ need not be coincident in time with the main fact proved, if the two are so closely connected with the declaration and can, in the ordinary course of affairs, be said to be a spontaneous explanation of the real cause.' State v. Maxey, 107 La. 799, 801, 32 So. 206; [Perrett v. Morgan's L. & T. R. & S. S. Co.] 131 La. [986] 988 [60 So. 639].

" 'Res gestæ consist of circumstances or declarations made admissible as original evidence by reason of their connection with the particular fact under investigation; and the test is whether the fact or circumstances put in evidence is so connected with the main facts under consideration as to elicit its character, to further its object, or to form, in connection with it, one continuous transaction.' State v. Donelon, 45 La. Ann. [744] 745 (753), 12 So. 922; 1 Greenleaf, § 108."

In Champagne et al. v. Welsh Motor Car Co., Inc., et al. (La. App.) 150 So. 35, the syllabus correctly sets out the finding of the court and is as follows:

"*Evidence.* Supervisor's declarations, to bookkeeper of motor car company preliminary to starting and to others while making journey, that he was making trip to sell prospective customer's stock and thus bring about sale of truck for company, held admissible as res gestæ in suit for compensation for supervisor's death in automobile collision while on journey (Act No. 20 of 1914, as amended).

"*Master and Servant.* Employee's declarations preliminary to starting and while making journey that it was in connection with service for employer held competent evidence upon which to base compensation award for employee's death while on journey (Act No. 20 of 1914, § 18, Subsec. 4, as amended by Act No. 85 of 1926)."

In that case the court quoted from State v. Thomas, 30 La. Ann. 600, a criminal case, where the rules of evidence are much more strict than in a compensation case, and the court said: " 'As to the declarations of a prisoner in his own behalf, unless they form a part of the res gestæ, they are not admissible for the defence. It is otherwise when they are a part of the res gestæ. To be such, it is not necessary that the declarations should be precisely concurrent with the act under trial; it is enough if they spring from it and are made under circumstances which preclude the idea of design. It is only when the declarations are distinguishable in point of time, and are opened to the suspicion of being a part of defendant's plan of defence that they should be excluded.' "

828

Having found the testimony of deceased's wife and his landlady to be competent evidence, and they being corroborated by three or four other reputable witnesses, and there being no testimony to the contrary, we find that the accident occurred as alleged in the petition, and defendants are liable to plaintiff for compensation, if the evidence shows that the injury received by plaintiff caused or contributed to his death.

Deceased was diabetic and any slight injury was liable to cause disastrous results. It is not uncommon for a slight scratch or bruise on any part of the body of one suffering with diabetes to cause septicæmia to set in with resulting death. Five doctors testified in the case; three for plaintiff and two for defendants. As usual, there is a conflict in their testimony. It will be of no benefit to any one to review in this opinion their testimony. The lower court was convinced that the preponderance of testimony was in favor of the position taken by plaintiff; that the injury caused the death. We find no manifest error in the finding of the lower court, and in fact are thoroughly in accord with its finding on fact.

There is no error in the judgment of the lower court, and it is affirmed, with costs.