516 So.2d 180 (1987)
STATE of Louisiana,
v.
Donald Ray ROBERTSON.
No. KA-6418.
Court of Appeal of Louisiana, Fourth Circuit.
November 17, 1987.
*181 William J. Guste, Jr., Atty. Gen., William B. Faust, III, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Terry M. Boudreaux, Asst. Dist. Atty., New Orleans, for plaintiff-appellee State of La.
Henry P. Julien, Jr., New Orleans, for defendant-appellant Donald R. Robertson.
Before KLEES, CIACCIO and WILLIAMS, JJ.
KLEES, Judge.
On May 16, 1985 a true bill was filed charging the defendant Donald R. Robertson and two co-defendants with two counts of first degree murder. Subsequently the cases of the co-defendants were severed. Trial was held on January 15, 16 and 17, 1986. At the conclusion of the trial, the jury found defendant Robertson guilty as to both counts and recommended a sentence of life imprisonment, which was imposed. The defendant then filed this appeal.
On May 10, 1985 the New Orleans Police Department was notified that a possible kidnapping had taken place in the 600 block of Josephine Street in the City of New Orleans. Upon arrival Officers Macbut and Taylor spotted a blue car which was suspected as having the perpetrators in it. The officers gave chase and eventually stopped the car. The occupants of the car were frisked and the car searched. The officers found clear plastic bags with white powder in it, a revolver and hand-rolled cigarettes. The revolver was found at the foot of defendant Robertson, who was on the front passenger side of the car. The officers also retrieved a pair of blue jeans from the front floor of the car. The defendant wore a pair of blue pants, a pair of football socks, a gray shirt and a pair of yellow plastic slippers. There was blood on his shirt, his right slipper and his right sock.
On the same day the N.O.P.D. was also notified of a possible murder at the intersection of Toulouse and North Villere Streets. Upon arrival they found a brown 1976 Chevy Malibu. Officer Norman McCord was one of the investigating officers. He found two black men in the car. One man had a bandana tied around his eyes and another bandana tied around his hands, which were behind him. This man was in the passenger seat. He was slumped over. Blood was all over the front area of the car. The officer also found another man in the back seat of the car with a bandana over his eyes and tied to the back of his head. He was laying over his left side falling forward with blood splattered about him. He was handcuffed behind his back. Both victims died of gunshot wounds to the head.
The officers later learned that these men were the same victims of the kidnapping that had been reported earlier. The defendant and the two other men who had been arrested for the kidnapping were then charged with first degree murder.
At trial, the defendant's girlfriend, with whom he lived, Connie Washington, testified *182 that on the night in question she saw one of the victims, Curtis Hardy, being led to a car by David West and a "tall guy". She also testified that the defendant left the house about one-half hour later.
Lola King, a friend of Ms. Washington, also testified. She stated that Ms. Washington called her and told her that both victims were being led away by the defendant, David West and another big guy (Gerald Jerry), as the woman spoke on the phone. Ms. King testified that she relayed this information to "Pearl" and to the police.
The defendant offered testimony from David West. According to West, it was Gerald Jerry who kidnapped the victims and shot them in the car in which they were found. West was told by Jerry to drive the car to a remote spot while Jerry followed in his car. Jerry then forced the victims into the car that West had been driving and shot both victims. One fell into West's lap, splattering him with blood. West changed from blue jeans to slacks while in the car. West and Jerry then drove to a liquor store where the defendant was. West got out of the car and told the defendant that Jerry was threatening to kill the defendant and his family. They all drove off and began to discuss the killing. The police stopped them and later arrested them. West acknowledged that blood had gotten on the defendant's clothes, but according to West, this was done after the killing, while the defendant rode in Jerry's car.
West also testified that Jerry killed the victims because they would not say where cocaine was located. West further testified that he had seen the defendant selling drugs to the victims three days before the murder.
After deliberation, the jury returned a verdict of guilty as charged.
Errors Patent
A review of the record shows that there are no errors patent.

Assignment of Error One
By this assignment of error, the defendant argues that the trial court erred in permitting the prosecution to elicit hearsay testimony. He argues that the court improperly allowed Ms. Lola King to testify concerning evidence which was told to her rather than information of which she knew through personal knowledge.
"Hearsay evidence" is evidence of an unsworn out-of-court statement made by a person other than the testifying witness which is introduced to establish the truth of its contents. State v. Arnold, 367 So.2d 324, 326 (La.1979).
In the instant case, it is not clear whether the witness was testifying about statements which she made to her friend Pearl, or whether Pearl made the statements. If Ms. King made the statements, these were not hearsay. Also, the witness was available for cross examination as to the truth of the statements. However, during cross examination Ms. King stated that these facts were received from Connie Washington, the girlfriend of the defendant. As such, the statements, although hearsay, fall within the res gestae exception. R.S. 15:447; State v. Kimble, 407 So.2d 693 (La.1981). The Supreme Court has stated: "The traditional exclusion of hearsay in jury trials is based upon consideration of unreliability and of potential unfairness to an accused to permit into evidence damaging out-of-court statements which cannot be tested as to their basis in fact or by cross examination of the out-of-court declarant." Arnold, supra at 326. These considerations are absent in the present case because the witness who testified to the out-of-court statement was the declarant. Id.
Accordingly, this assignment is without merit.

Assignment of Error Two
By this assignment of error, the defendant argues that the prosecution improperly impeached its own witness, Connie Washington. He argues that Ms. Washington testified that the victims were kidnapped by two persons, David West and a "tall guy". In comparison to this testimony, Ms. Lola King, another State witness, *183 testified that three individuals, Gerald Jerry, David West and Donald Robertson, kidnapped the victims. According to the defendant, the testimony of Ms. King constituted impeachment of the testimony of Ms. Washington.
R.S. 15:487 reads as follows:
§ 487. Impeachment of own witness
No one can impeach his own witness, unless he have been taken by surprise by the testimony of such witness, or unless the witness show hostility toward him, and, even then, the impeachment must be limited to evidence of prior contradictory statements.
Nevertheless, R.S. 15:489 holds that the introduction of a witness who testified contrary to one's own witness is not the impeachment of one's own witness.
In State v. Hill, 173 La. 181, 136 So. 485 (1931), the Louisiana Supreme Court reversed a lower court conviction in which the record showed that the trial court had improperly precluded the defense from offering testimony of two witnesses who would have corroborated his defense though their testimony was contrary to two other witnesses who had already testified. In the instant case, the testimony of Lola King was not completely contrary to that of Connie Washington. Both witnesses' testimony proved that the victims were kidnapped from in front of the defendant's home.
This assignment is without merit.

Assignment of Error Three
By this assignment, the defendant argues that the trial court erred in admitting into evidence a pair of jeans which the prosecution failed to sufficiently connect to the case. R.S. 15:441 defines relevant evidence as follows:
§ 441. Relevant evidence defined: facts admissible
Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible.
The standard of relevancy in Louisiana is based on logic and experience. State v. Whittaker, 463 So.2d 1270, 1272 (La.1985); State v. Davenport, 445 So.2d 1190 (La.1984). It is not necessary that all possibility of alteration be eliminated for evidence to be admissible, as long as the evidence establishes connexity by a preponderance of the evidence. State v. Tatum, 506 So.2d 584 (La.App. 4th Cir.1987).
Here the State and the defendant stipulated that when the defendant was arrested, the following articles, which he was wearing, tested positive for blood type "B": "... one vinyl slipper seized from Donald Ray Robertson, one gray short sleeved sweatshirt seized from Donald Ray Robertson...." They further stipulated that type "B" blood was found on one pair of blue jeans with a black belt which no one was wearing, but which were seized from the car. The State and the defense also entered a stipulation that both victims had type "B" blood.
Officer Taylor, the arresting policeman, testified that the blue jeans were found in the car in which the defendant was riding when he was stopped and later arrested. Based on this information the admission of the jeans was proper to show a connection between the victim's blood type and that found on both the clothing of the defendant and the clothing in the car. Furthermore, the defendant's only witness, David West, testified later that he had been wearing the blue jeans and that he had taken them off in the car. Given these statements, the evidence appears relevant. We find no abuse of discretion as to the trial court's ruling.
This assignment lacks merit.

Assignment of Error Four
By this assignment of error, the defendant argues that the circumstantial evidence, when viewed in a light most favorable to the prosecution, is not sufficient to convince the trier of fact that the defendant *184 is guilty beyond a reasonable doubt of every element of the crime.
The standard to be used by the appellate court in determining the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Summit, 454 So.2d 1100 (La.1984); State v. Fuller, 414 So.2d 306 (La.1982).
La.R.S. 14:30 reads:
§ 30. First degree murder
A. First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, or simple robbery;
(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties;
(3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person; or
(4) When the offender has specific intent to kill or inflict great bodily harm and has offered, has been offered, has given, or has received anything of value for the killing.
(5) When the offender has the specific intent to kill or to inflict great bodily harm upon a victim under the age of twelve years.
Thus, under R.S. 14:30(A)(3), the violation with which the defendant was charged, the State must prove that the defendant actively desired to kill or cause great bodily harm to more than one person. Specific intent to kill may be inferred from the accused's entire conduct. State v. Humphrey, 412 So.2d 507 (La.1981), appeal after remand 445 So.2d 1155 (La.1984).
In the instant case, the record shows that the defendant was selling drugs to the victims. It further shows that the defendant had argued with at least one of the victims prior to the murder. Other evidence established that when the defendant was arrested, he had blood on his socks, shirt and shoe. This blood matched the blood type of the victims. A pistol was also found at the defendant's feet in the car at the time that he was arrested. The bullets taken from the victims' bodies matched those of the pistol found near the defendant. Further evidence showed that fingerprints on the car in which the victims were found matched those of the defendant.
Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded that the essential elements of the crime of first degree murder were proven beyond a reasonable doubt. See State v. Deboue, 496 So.2d 394 (La.App. 4th Cir.1986).
This assignment has no merit.
Accordingly, the defendant's convictions and sentence are hereby affirmed.
AFFIRMED.
WILLIAMS, J., concurs.
WILLIAMS, Judge, concurring.
I agree with the majority's decision, but specifically concur with the result reached on the issue of alleged hearsay evidence introduced at trial.